[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15435
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-00195-SCB-TGW

JESSE DETRIS,

Plaintiff-Appellant,

versus

JIM COATS,
as Sheriff of Pinellas County, in his
individual and official capacity,
REGINALD CAMPBELL,
HAL WHITE,
JEFFREY FROST,
JOHN TOURNAI,
R. KEY,
Pinellas County Sheriff's Deputies in their individual capacities,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 11, 2013)

Before HULL, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Appellant Jesse Detris appeals the district court's order dismissing with prejudice his 12-count civil rights Complaint that he filed against Appellees Jim Coats, the Sheriff of Pinellas County, and Deputies Reginald Campbell, Hal White, Jeffrey Frost, John Tournai, and R. Key.  In his Complaint, Detris alleged the Appellees were liable under 42 U.S.C. § 1983 and Florida state law for the use of excess force against him while he was being held in pretrial detention.

## I. BACKGROUND[1]

On the night of January 17, 2009, Detris was arrested for driving under the influence.  He was taken to the Pinellas County Jail, where he was placed in a holding cell.  Detris's handcuffs began cutting off his circulation, which led him to call out for assistance.  After failing to receive any attention, Detris began kicking his cell door.  Deputy Campbell yelled at Detris to stop kicking the door and warned him that he would be put in the "strap-down" chair.  To stop Campbell from leaving, Detris tapped the door again.  In response, Deputy Key opened the cell door and Campbell, White, Frost, and Tournai entered the cell.  Detris

---

[1] Because this appeal comes to us on a motion to dismiss, we accept the factual allegations in the Complaint as true and view them in the light most favorable to Detris. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

2

explained to the deputies that he was diabetic and the loss of circulation from the handcuffs would lead to a serious medical situation.

On orders from Deputy Campbell, White, Frost, and Tournai attacked Detris, throwing him head first into a wall and then flinging him face first onto the concrete floor. White, Frost, and Tournai then pinned Detris to the floor. One of the deputies knelt on the right side of Detris's face, another deputy knelt on his kidney, and the third deputy wrenched Detris's arms, which were handcuffed behind his back, toward Detris's right side. Detris pleaded with the deputies to stop, but they ignored him and continued to beat him. Thereafter, the deputies removed Detris's handcuffs and threw him onto a concrete bench. Deputies Campbell and Key watched while White, Frost, and Tournai beat Detris, but joined the other deputies in laughing at Detris and making "boorish remarks" about Detris urinating on himself when his kidney was compressed. Amongst his injuries, Detris suffered abrasions, lacerations, a lumbar compression fracture, a swollen left eye, and a damaged rotator cuff in his left shoulder that required surgery.

## II. DISCUSSION

We review de novo the district court's grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## A. Count I

In Count I, Detris alleged that Sheriff Coats was liable in his individual capacity for supervising Deputies Campbell, White, Frost, Tournai, and Key. Detris maintained that Coats either directed or failed to correct the deputies' constitutional violations, or initiated a custom or policy of deliberate indifference toward his constitutional rights. The allegations pled in Count I are simply "formulaic recitation[s] of the elements of a cause of action" for supervisory liability under § 1983, as well as "naked assertions devoid of further factual enhancement," and, as such, "will not do." *Id.* (quotations and brackets omitted). Accordingly, the district court did not err by dismissing Count I.

## B. Count II

In Count II, Detris alleged that Deputies Campbell, White, Frost, and Tournai were liable under § 1983 for conspiring with each other to deprive him of his constitutional rights. He maintained that Campbell instructed the other deputies to use excessive force on him, and that the deputies agreed to do so. On appeal, Detris argues the district court erred by dismissing this claim because it was not barred by the intracorporate conspiracy doctrine. Specifically, the doctrine

4

was inapplicable because each of the defendants was named in his individual capacity and no corporate entity was named as a defendant.

The district court did not err by dismissing Count II.  Under the intracorporate conspiracy doctrine, a corporation's employees cannot conspire among themselves when acting in the scope of their employment, as their actions are attributed to the corporation itself, "thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quotations omitted).[2]  Contrary to Detris's assertions, the intracorporate conspiracy doctrine prohibits a § 1983 claim against law enforcement officers in their individual capacities, *see id.* at 1261-62, as well as claims that do not seek to hold the corporate entity itself responsible for its agents' actions, *see Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010) (noting that the only portion of a conspiracy claim that remained were the allegations against a prosecutor alone, and that the claim was barred by the intracorporate conspiracy doctrine).

Furthermore, although Detris alleged that other unidentified persons conspired with the deputies to destroy surveillance tapes of the incident, he did not allege that those persons worked outside of the Pinellas County Sheriff's

---

[2] The parties do not dispute that the deputies were acting within the scope of their employment during their encounter with Detris.  *See Grider*, 618 F.3d at 1261("The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.").

Department, nor did he ever explicitly seek to amend his Complaint to allege that the deputies conspired with outsiders. *See Rehberg*, 611 F.3d at 854 ("The 'conspiracy' occurred only within a government entity, and thus the intracorporate conspiracy doctrine bars [the claim].").

## C. Counts III and IV

In Count IV, Detris alleged that Deputies White, Frost, and Tournai violated his Fourteenth Amendment rights by using unnecessary and excessive force against him. In Count III, Detris asserted that Deputies Campbell and Key were liable under § 1983 for failing to intervene and stop White, Frost, and Tournai from using excessive force. The district court dismissed these claims, finding that the facts alleged by Detris showed the deputies were not acting maliciously or sadistically, but, instead, were acting to preserve discipline and security in the jail. Because the force used was not excessive, Deputies Campbell and Key did not have a duty to intervene.

The district court erred by dismissing Count IV. "A jailor's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it 'shocks the conscience.'" *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009). Force used in a good faith effort to maintain or restore discipline does not shock the conscience, but the malicious and sadistic use of force to cause harm does. *Id.* In determining whether force was applied maliciously and sadistically to

cause harm, we consider five factors:  (1) the need for the force; (2) the relationship between the need and the amount of force used; (3) the extent of the prisoner's injuries; (4) the threat to the safety of the staff and inmates; and (5) efforts made to temper the severity of the force.  *Id.*

Although officers are entitled to use some force to quiet an inmate who is making a disturbance, *see id.* at 1218; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (holding that in order to restore order, a prison guard was justified in pushing or shoving an inmate who was yelling), Detris alleged that the officers attacked him after he had explained his concerns about his diabetes to them.  He also alleged that the officers continued to beat him while he was lying helpless on the floor in handcuffs, pleading for them to stop.  While the initial use of force may have been warranted, Detris alleged sufficient facts to state a plausible claim that the continued use of force was unnecessary to maintain or restore discipline and was disproportionate to the need for the force.[3]

The district court similarly erred by dismissing Count III.  As we have held, an officer may be liable under § 1983 for failing to intervene and stop another officer's use of excessive force.  *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).  However, "for an officer to be liable for failing to stop police brutality, the

---

[3] Even if Detris's excessive force claim was unlikely to survive summary judgment or a trial, the Supreme Court has explained that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted).

officer must be in a position to intervene." *Id.* (quotation omitted).  Detris's

Complaint alleged that Deputies Campbell and Key stood by and watched while

White, Frost, and Tournai beat him.  Viewed in the light most favorable to Detris,

Campbell and Key were in a position to intervene because White, Frost, and

Tournai continued to assault Detris after he was pinned on the floor and begging

for them to stop.  Under the facts alleged, Campbell and Key could have sought to

intervene or could have told the other officers to stop once Detris was pinned to the

floor.  As such, Detris pled enough facts to state a plausible claim for relief.

*D. Counts VII, IX, and X*

In Count VII, Detris asserted that Deputies White, Frost, and Tournai were

liable under Florida law for the tort of battery.  In Count IX, Detris alleged that

Deputies Campbell and Key were liable under state law for failing to intervene,

and in Count X that Sheriff Coats in his official capacity was vicariously liable

under state law for Campbell's and Key's failure to intervene.

We have already determined Detris's excessive force claim should have

been allowed to proceed, and we thus conclude the parallel state law claim of

battery should also be allowed to proceed.  *Cf. City of Miami v. Sanders*, 672 So.

2d 46, 47 (3d DCA 1996) (holding in an analogous context that "[i]f excessive

force is used in an arrest, the ordinarily protected use of force by a police officer is

transformed into a battery").

The district court found Detris's state law claim for failure to intervene was due to be dismissed because he did not allege facts showing that Deputies Campbell and Key owed him a duty, or even that Key was present in the cell. Detris, however, alleged that Deputy Key opened the cell door, and watched while White, Frost, and Tournai beat him. Furthermore, to the extent Detris's claim is premised on negligence, he stated a plausible claim for relief because police officers have a "special relationship" for the safety of persons in their custody, and Detris alleged that he was incarcerated, handcuffed, and helpless when White, Frost, and Tournai assailed him. *See Sanders v. City of Belle Glade*, 510 So. 2d 962, 964 (4th DCA 1987); *see also Wallace v. Dean*, 3 So. 3d 1035, 1048 (Fla. 2009) ("A special tort duty arises when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' . . . by taking persons into custody [or] detaining them . . . ." (quotations, alterations, and emphasis omitted)).

The district court also erred by dismissing Detris's vicarious liability claim against Sheriff Coats. The court found Deputies Campbell and Key did not have a duty to intervene, and thus Sheriff Coats could not be vicariously liable for their failure to stop the beating. The court, however, did not discuss the duty law enforcement officers owe to persons who are in custody or detention. Nor did the

9

court discuss a sheriff's liability for his deputies' actions under Fla. Stat. § 30.07,[4] or the applicability of any state law immunity doctrines. Thus, we leave it to the district court to consider these issues in the first instance on remand.

*E. Count XI*

In Count XI, Detris alleged that Deputies Campbell, White, Frost, Tournai, and Key were liable under Florida law for the intentional infliction of emotional distress. On appeal, Detris simply asks rhetorically what conduct would rise to the level of the tort if the actions alleged in the Complaint do not. Detris does not enumerate the elements of a cause of action for intentional infliction of emotional distress, offers no argument about what constitutes extreme and outrageous conduct under Florida law, and does not provide a single citation to statutory or case law in support of his argument. Accordingly, he has not sufficiently raised the issue on appeal and we deem it waived or abandoned. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *Doe v. Moore*, 410 F.3d 1337, 1349 n.10 (11th Cir. 2005) ("On appeal, we require appellants to not only state their contentions to us, but also to give the reasons for

---

[4] Section 30.07 provides in full: "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible."

10

them, with citations to the authorities and parts of the record on which the appellant relies." (quotation omitted)).

*F. Leave to Amend*

In his response to the Appellees' motion to dismiss, Detris requested that any dismissal be without prejudice, and he argues on appeal that the district court should not have dismissed his claims with prejudice. Detris, however, never filed a motion to amend his Complaint or expressly sought leave to amend before the district court. We have held that a district court "is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Furthermore, although Detris requested that any dismissal be without prejudice, his opposition to the motion to dismiss did not contain any proposed amendments or set forth the substance of the proposed amendments. Thus, to the extent Detris's response to the motion to dismiss constituted a request to amend his Complaint, the district court did not err by denying the request and dismissing Counts I and II with prejudice.[5] *See U.S. ex*

---

[5] Detris does not raise any argument in his initial brief regarding the district court's dismissal of Count V. Accordingly, the issue is abandoned. *See Hamilton*, 680 F.3d at 1318-19. Detris explicitly abandoned Counts VI and XII before the district court, and we do not address them on appeal. Detris similarly abandoned Count VIII in his reply brief before us, and we therefore do not address it.

11

*rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006) (affirming the district court's dismissal of a complaint with prejudice because the plaintiff's request for leave to amend that he included in his opposition to a motion to dismiss did not attach the proposed amendment or set forth the substance of the proposed amendment); *Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999).

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Counts I and II.  We reverse the district court's dismissal of Counts III, IV, VII, IX, and X, and remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[6]

---

[6] Detris's motion to file a reply brief out of time is granted.  Appellees' motion to strike the reply brief is denied.