[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11100
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-00179-MW-GRJ

RICHARD HENDRICKSON,

Plaintiff–Appellant,

versus

WILLIAM P. CERVONE, et al.,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 26, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Proceeding *pro se*, Plaintiff Richard Hendrickson sued eleven defendants for civil rights violations under 42 U.S.C. § 1983. Plaintiff moved to proceed *in forma pauperis*, and the district court granted the motion. Nonetheless, the district court

dismissed Plaintiff's claims under 28 U.S.C. § 1915(e)(2)(B)(ii), which permits a district court to dismiss an *in forma pauperis* complaint *sua sponte* if the complaint fails to state a claim. On appeal, Plaintiff challenges the district court's dismissal of his claims against five defendants.[1] After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual Background

The complaint describes a wide-ranging conspiracy involving Melisa and Mathew Rocks ("the Rockses"), Assistant State Attorney Robert Willis, State Attorney William Cervone, and other defendants not subject to this appeal. Defendants' purported goal was to obtain Plaintiff's arrest (and eventual conviction) without probable cause. An arrest would allow Willis and Cervone, both state attorneys, to "capitalize for personal gain in their respective law enforcement role/s" and would enable the Rockses to sue Plaintiff for property or money. In addition to the conspiracy, the complaint also describes a separate incident involving Plaintiff's arrest by Volusia County Deputy Sergeant Daniel

---

[1] The complaint contains eleven counts, each against one of eleven defendants. The district court dismissed each count for failure to state a claim. Plaintiff's brief addresses only five of those counts: the counts against Melisa Rocks, Mathew Rocks, Assistant State Attorney Robert Willis, State Attorney William Cervone, and Volusia County Deputy Sergeant Daniel Sweeley. We conclude that Plaintiff has abandoned his claims against the remaining six defendants, as he does not challenge the district court's dismissal of those claims in his brief on appeal. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (internal citations omitted). We will therefore not address those claims.

2

Sweeley.  The following paragraphs describe the events and actions attributable to each defendant.[2]

### 1.    Melisa and Mathew Rocks

Beginning in August 2009, Plaintiff lived in his house with Defendants Melisa and Mathew Rocks and their children.  In February 2010, Plaintiff received money as a settlement for severe burns he had suffered years earlier.  Soon after, Plaintiff learned of a conspiracy between Duran Carmen (one of the Rockses' adult children) and the Rockses to extort from Plaintiff this settlement money.  Pursuant to this conspiracy, Carmen and the Rockses would fabricate sexual abuse allegations by having Carmen persuade his 11-year-old stepbrother MRJ to claim that he had been sexually abused by Plaintiff.  Carmen and the Rockses would then report the abuse to the police unless Plaintiff (1) paid Carmen and the Rockses and (2) waived Carmen's debt to Plaintiff.  In the meantime, Carmen alleged in a sworn affidavit that Plaintiff had sexually abused him when he was eight years old. The Rockses subsequently told Plaintiff that Carmen was completely responsible for the scheme to extort him.

On October 21, 2012, the Rockses allegedly conspired with State Attorney Willis and Deputy Sheriff Wendy Snodgrass to "come up with a date which they

---

[2]  For purposes of this opinion, we accept the allegations in complaint as true. *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003) ("A district court's *sua sponte* dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) is reviewed *de novo*, viewing the allegations in the complaint as true.").

might be able to anchor their false creation of sex abuse." They decided that the fabricated sex crime occurred on April 30, 2011, while the Rockses were attending a baseball game without their children.

On November 15, 2012, Melisa Rocks told Plaintiff that if he paid her and paid off her dental bill, Mathew Rocks would contact Willis to make sure that no charges were filed against Plaintiff. Mathew Rocks confirmed Melisa Rocks's offer and added that Plaintiff should create a college trust fund for each of Mathew Rocks's four children. In response, Plaintiff sent the Rockses $700. But despite the payment, Willis filed an information and obtained a warrant for Plaintiff's arrest. Plaintiff was arrested and placed in jail.

2.    Robert Willis

At some point before June 25, 2012, Defendant Assistant State Attorney Willis informed Plaintiff's attorney that no charges would be filed against Plaintiff. In September 2012, Willis stated that "it would be better for everyone if [Plaintiff] . . . move[d]."[3] With the understanding that no charges would be filed, Plaintiff moved from Florida to Alaska, having obtained the permission of his employer to transfer.

---

[3] Also, in September 2012, Willis received information describing Carmen's attempt to extort money from Plaintiff. Namely, Carmen's wife and another individual affirmed that Carmen had confessed that he had falsified sexual allegations against Plaintiff. Nonetheless, Willis refused to investigate.

4

On October 9, 2012, Plaintiff learned that Willis "had changed his mind and would now proceed to file [an] information and warrant and that total bond of $1,200,000 bond would be set." Willis had deceived Plaintiff: (1) to discourage Plaintiff from retaining new, experienced counsel, (2) to "entrap[]" Plaintiff by convincing him to cross into Canada on his way to Alaska, (3) to "eradicate" Plaintiff's resources and employment, (4) to increase Plaintiff's bond, (5) to "extinguish" Plaintiff's constitutional rights, and (6) to vindictively prosecute Plaintiff without probable cause.

In response to Willis's announcement, Plaintiff decided to return to Florida. Around this time, on October 21, 2012, as described above, Willis, Deputy Sheriff Snodgrass, and the Rockses conspired to "come up with a date which they might be able to anchor their false creation of sex abuse." In November 2012, Willis swore in support of an information that charged Plaintiff with (1) capital sexual battery, (2) lewd or lascivious conduct, and (3) showing obscene material to MRJ and JR on April 30, 2011. In the certification, Willis personally swore that he had "received testimony under oath from . . . material . . . witnesses" and that the testimony supported the charges.

### 3.   William Cervone

In depositions taken on May 14, 2013, the Rockses' children, MRJ and JR, denied that Plaintiff had sexually abused them. JR's deposition also contradicted

statements that he had made during a February 2012 interview.  For example, in February 2012, JR stated that Plaintiff had forced him to watch pornography involving two men.  In his deposition, however, JR clarified that he had been watching pornography involving two men when Plaintiff changed the program to show pornography involving a man and a woman instead.  JR's inconsistent statements were the result of repetitious questions, interviews, and JR's attempt "to please and placate his interviewer/s in any way he could imagine."

On May 30, 2013, the two capital sexual battery counts and the lewd or lascivious conduct count involving MRJ were each dismissed for insufficient evidence.  Although Defendant State Attorney William Cervone dismissed the information, he swore in bad faith by again charging Plaintiff for (1) lewd or lascivious conduct against JR and (2) showing obscene material to MRJ and JR.  Like the original information, the new charges were based on Willis's assertion that he had received testimony supporting the charges from material witnesses.  But on October 8, 2013, Cervone dismissed all charges for insufficient evidence.

### 4.    Daniel Sweeley

In early November 2012, Plaintiff traveled from Alaska to Florida because of Willis's decision to file an information and obtain an arrest warrant.  On November 6, 2012, Defendant Deputy Sergeant Daniel Sweeley arrested Plaintiff.  Sweeley left Plaintiff handcuffed in a patrol car for three hours.  Plaintiff

6

complained of extreme discomfort caused by a pre-existing shoulder injury and burn scars.  At the direction of his superior officer, Sweeley impounded Plaintiff's car without a warrant, despite Plaintiff's objection.  After the impounding, an inventory search occurred.

### B.    Procedural History

In September 2014, Plaintiff, acting *pro se*, filed a § 1983 civil rights action against fourteen defendants, including the Rockses, Willis, Cervone, and Sweeley. Plaintiff later moved for leave to proceed *in forma pauperis*.  The magistrate judge granted the motion for leave to proceed *in forma pauperis*, but directed Plaintiff to amend the complaint by utilizing a court-provided form designed to help *pro se* litigants file law suits under § 1983.  Plaintiff amended the complaint but failed to use the court-provided form.  The magistrate judge dismissed the complaint and again directed Plaintiff to use the court-provided form.  Plaintiff "objected" to having to file a second amended complaint using the court-provided form.  The magistrate judge construed Plaintiff's objection as a motion for reconsideration and denied the motion.

Plaintiff subsequently filed a second amended complaint, this time raising eleven counts.  Only five counts are relevant to this appeal.  Specifically, in Count I, Plaintiff sued State Attorney Cervone for malicious prosecution.  In Count II, Plaintiff sued Assistant State Attorney Willis for malicious prosecution.  In Counts

7

VIII and IX, Plaintiff sued the Rockses for civil conspiracy.  And in Count XI,

plaintiff sued Sergeant Sweeley for violating Plaintiff's Fourth, Fifth, Sixth,

Eighth, and Fourteenth Amendment rights.  The magistrate judge issued a report

and recommendation ("R&R"), recommending that the district court dismiss the

complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.[4]  Over

Plaintiff's objections, the district court adopted the R&R and dismissed Plaintiff's

complaint.  This appeal followed.

## II.    DISCUSSION

### A.    Applicable Standards

We review *de novo* the district court's dismissal of a complaint for failure to

state a claim under § 1915(e)(2)(B)(ii).  *Troville v. Venz*, 303 F.3d 1256, 1259

(11th Cir. 2002).

To prevail on a § 1983 malicious prosecution claim, Plaintiff must establish:

"(1) the elements of the common law tort of malicious prosecution; and (2) a

violation of his Fourth Amendment right to be free from unreasonable seizures."

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (emphasis in

original).  Florida law requires the following six elements to establish a malicious

prosecution claim: "(1) an original judicial proceeding against the present plaintiff

---

[4] Section 1915(e)(2)(B)(ii) states that "the court shall dismiss [an *in forma pauperis*] case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."

8

was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

### B.    Section 1983 Claims Against Defendants

#### 1.    Willis and Cervone

Plaintiff sued State Attorney Cervone and Assistant State Attorney Willis for malicious prosecution.  In particular, Plaintiff alleged that Willis (1) falsely informed Plaintiff that he would not bring charges against him, (2) falsely certified that he had testimony to support the charges against Plaintiff, and (3) told Plaintiff it would be better if he moved away.  According to Plaintiff's allegations, Cervone pursued prosecution of Plaintiff based on a false assertion that there was testimony from material witnesses to support re-charging Plaintiff.

The district court dismissed the claims against Willis and Cervone based on prosecutorial immunity because the alleged conduct fell within their roles as advocates of the State.  Plaintiff argues that the district court improperly

9

determined that Willis and Cervone were entitled to absolute immunity with respect to the above allegations.[5]

"In § 1983 actions, prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010). Conversely, "[i]f a prosecutor functions in a capacity unrelated to his role as an advocate for the state, he is not protected by absolute immunity but enjoys only qualified immunity." *Id.* at 838. To determine whether absolute immunity or qualified immunity applies, a district judge must employ "a functional approach [of] granting immunity based on conduct." *Id.* at 837.

Absolute immunity "applies to [a] prosecutor's actions 'in initiating a prosecution and in presenting the State's case.'" *Id.* Specifically, absolute immunity applies to "appearances in judicial proceedings, including prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing." *Id.* at 837–38. Other absolutely immune actions include actions "stemming from the prosecutor's function as advocate," such as actions

---

[5] While Plaintiff challenges the dismissal of the malicious-prosecution claim against Willis in his brief on appeal, he does not explicitly challenge the district court's dismissal of the claim against Cervone. Because Plaintiff is proceeding *pro se*, we extend his arguments (to the extent applicable) to Cervone. *See Timson*, 518 F.3d at 874 (explaining that we liberally construe the briefs of *pro se* appellants). Moreover, although Plaintiff made several allegations against Willis in his complaint, we only address those mentioned by Plaintiff on appeal. *See id.*

10

"undertaken . . . in preparing for the initiation of judicial proceedings or for trial." *Id.* at 838.  Qualified immunity, rather than absolute immunity, applies to a prosecutor acting as an investigator, a complaining witness, or an administrator. *Id.*; *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

Here, the district court properly dismissed the malicious-prosecution claim against Assistant State Attorney Willis.  Absolute immunity applies to Willis's statement that he would not bring charges against Plaintiff and that it would be better if Plaintiff moved because these acts pertain to a prosecutor's discretion and judgment in initiating a criminal prosecution.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury generally rests entirely in [the prosecutor's] discretion.").

Plaintiff further asserts that Willis was not entitled to absolute prosecutorial immunity because he was not acting as an advocate for the State when he certified that there was testimony under oath from material witnesses to support the criminal charges.  In support of his argument, Plaintiff relies on the Supreme Court's decision in *Kalina v. Fletcher*, 522 U.S. 118 (1997).  In *Kalina*, the Supreme Court affirmed the denial of absolute immunity to a prosecutor who certified under penalty of perjury that the facts in an application for an arrest warrant were true. 522 U.S. 118, 129–31 (1997).  The Supreme Court determined that the prosecutor

11

was performing the function of a witness, not a lawyer, in certifying under oath that the factual statements were true. *Id.* We have explained that determining whether a prosecutor functioned as an advocate or as a witness depends on whether the prosecutor provided sworn or unsworn statements. *Rivera v. Leal*, 359 F.3d 1350, 1355 (11th Cir. 2004). Focusing on this distinction, we affirmed the grant of absolute immunity to a prosecutor who provided inaccurate information to the court, concluding that the prosecutor did not act as a complaining witness because he never personally swore to the truth of any of the information that he shared with the court. *Id.*

We conclude that Willis is entitled to absolute immunity for his certification because Plaintiff failed to allege facts showing that Willis was functioning as a complaining witness, an administrator, or an investigator. Plaintiff alleged that Willis certified that he had received testimony under oath from material witnesses to support the charges for capital sexual battery, lewd or lascivious conduct, and showing obscene material to a child. Notably, Plaintiff never alleged that Willis personally swore to the truth of the facts contained in the information. *See Rivera*, 359 F.3d at 1355; *Kalina*, 522 U.S. at 129–31.

Moreover, the facts as alleged by Plaintiff show that Willis's certification complied with the Florida Rules of Criminal Procedure governing the filing of an information, which require:

12

> An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.

Fla. R. Crim. P. 3.140(g).  Because the rule requires that the information be signed by the state attorney or assistant state attorney, Willis was not performing an act that any complaining witness could have done.  *See Kalina*, 522 U.S. at 129–30 (explaining that a prosecutor performed an act that any complaining witness could have performed by swearing under oath to the truth of the facts in a certification of probable cause, as the document did not require the certification to come from a prosecutor).  Because Plaintiff's allegations show that Willis was acting within his role as an advocate in making the certification, the district court did not err in concluding that absolute immunity shields this act.

As to State Attorney Cervone, the district court likewise did not err by dismissing Plaintiff's malicious-prosecution claim against him based on absolutely immunity.  Cervone was acting within his role as an advocate for the State when he filed the information against Plaintiff.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

13

Finally, to the extent Plaintiff argues that the district court did not apply the functional approach in considering whether Willis and Cervone were entitled to prosecutorial immunity, we reject this argument. The district court parsed out each allegation made against Willis and Cervone and determined that they were entitled to immunity for each of their respective acts. Accordingly, Plaintiff failed to state a claim against Willis and Cervone.

### 2.    The Rockses

Plaintiff sued Mathew and Melisa Rocks for § 1983 civil conspiracy. Specifically, Plaintiff alleged that the Rockses conspired to have Plaintiff arrested without probable cause for the purpose of extorting money from him. The district court concluded that the Rockses were private parties, not state actors, and therefore could not be liable for a § 1983 civil conspiracy. On appeal, Plaintiff appears to argue that the district court erred by failing to consider the Rockses' scheme with Deputy Sheriff Snodgrass and other defendants.

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). However, "[t]o obtain relief under § 1983, [the plaintiff] must show that he was deprived of a federal right by a

14

person acting under color of state law." *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000).

As noted, the district court dismissed the claims against the Rockses because they did not act under color of state law. However, "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984). We have explained that:

> Private parties who corruptly conspire with state officials to maliciously prosecute an individual . . . act under color of state law and can be sued by that individual under section 1983. The plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.

*NAACP v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990) (citations omitted).

Here, the district court did not err by dismissing the § 1983 civil conspiracy claims against the Rockses because Plaintiff failed to allege facts showing that they should be considered state actors, or that they conspired with state actors to violate his constitutional rights. Plaintiff makes several allegations that the Rockses conspired with Mathew Rocks's son Carmen, another private actor, to fabricate the claims of sexual abuse in order to extort money from Plaintiff. Indeed, Plaintiff alleges that Carmen filed a sworn affidavit, in which he stated that Plaintiff sexually abused him when he was eight years old, and that Carmen persuaded MRJ

15

to claim that he had been sexually abused by Plaintiff.  But conspiring with another private actor does not state a claim for § 1983 conspiracy.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks omitted).

While making allegations that the Rockses conspired with Carmen to fabricate evidence, Plaintiff does not allege that the Rockses conspired with other state actors to do the same.  With respect to the state actors, Plaintiff alleges that the Rockses conspired with Willis and Deputy Sheriff Snodgrass to "invent a crime" and create a date for when the fabricated sexual abuse took place.  These conclusory allegations, however, are not enough to establish that the Rockses conspired with state actors to have him arrested without probable cause.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth.").[6]  Therefore, the district court correctly dismissed the § 1983 civil conspiracy claims against the Rockses.

---

[6] Besides his failure to allege facts showing that the conspiracy resulted in a constitutional violation, Plaintiff's allegations that the Rockses conspired with state actors to invent false charges is contradicted by other allegations in the complaint.  Specifically, in describing the discrepancies between JR's May 2013 deposition and his interview in February 2012 before the charges were filed, Plaintiff alleges that JR stated in his February 2012 interview that Plaintiff had shown him pornography involving two men.  Given Plaintiff's admission that JR told investigators that Plaintiff had shown him pornography, Plaintiff's allegations tend to show that there was arguable probable cause for at least one of the charges for which he was arrested.

16

3.    Deputy Sweeley

Plaintiff sued Sweeley for several constitutional violations that Plaintiff alleged occurred during his arrest.  In particular, Plaintiff alleged that Sweeley placed him in handcuffs for three hours, in violation of his Eighth Amendment rights.  Plaintiff further alleged that Sweeley violated his constitutional rights by impounding and searching his car.  The district court concluded that Plaintiff failed to state a claim against Sweeley for a Fourth Amendment violation based on excessive force or for the seizure of Plaintiff's car.  On appeal, Plaintiff reiterates that he was handcuffed for over three hours and had made arrangements to prevent his car from being impounded.

a.    Excessive Force

We evaluate whether a Fourth Amendment violation has occurred in an excessive force case stemming from an arrest under an objective reasonableness standard.[7]  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  In doing so, we ask whether the officer's actions are "objectively reasonable in light of the facts confronting the officer."  *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015).  And we recognize that "an arrest 'necessarily carries

---

[7]  Although Plaintiff argues that his excessive force claim is governed by the Eighth Amendment, the district court properly analyzed Plaintiff's excessive-force claim as arising under the Fourth Amendment.  *See Jackson v. Sauls*, 206 F.3d 1156, 1169 (11th Cir. 2000) (analyzing a claim of excessive force arising from an arrest under the Fourth Amendment); *see also United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992) ("[T]he Eighth Amendment applies only after a prisoner is convicted.").

with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.*

Here, the district court did not err by concluding that Plaintiff failed to state a claim for excessive force against Sweeley. Plaintiff alleged that Sweeley "placed [P]laintiff [in a patrol car] in handcuffs behind his back [for] over three hours" and that "Plaintiff complained about the extreme discomfort due to prior shoulder injury and burn scars." However, "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Plaintiff never alleged, nor does he argue on appeal, that he sustained any injuries from the handcuffing. Accordingly, the district court properly dismissed Plaintiff's claim for excessive force against Sweeley.

b.    <u>Impounding of Plaintiff's Car</u>

The district court also did not err by concluding that Plaintiff failed to allege facts showing that Sweeley violated his constitutional rights by impounding his car following his arrest. Plaintiff alleged that Sweeley impounded his car at the direction of his superiors, even though Plaintiff had made arrangements for his car to be picked up by a friend.

The Supreme Court addressed a similar situation in *Colorado v. Bertine*, 479 U.S. 367 (1987). In *Bertine*, the police impounded the plaintiff's car following his

18

arrest for driving under the influence, even though the plaintiff "could have been offered the opportunity to make other arrangements for the safekeeping of his property." 479 U.S. at 373–74. The Supreme Court determined that seizure of the car was not unconstitutional because the police had discretion to impound the car following the plaintiff's arrest, and did not act in bad faith by doing so. *Id.* Because Plaintiff did not allege facts showing that Sweeley acted in bad faith or outside of his discretion by impounding Plaintiff's car, the district court properly dismissed Plaintiff's claim against Sweeley. *See id.*

### C.    Plaintiff's Required Use of a Form

Plaintiff's final argument is that the district court violated his constitutional rights by requiring him to use a court-provided form for his complaint because it did not permit him to raise any claims under the federal court's pendent jurisdiction. In other words, Plaintiff appears to be arguing that the court-provided form did not permit him to raise any state-law claims.

Plaintiff's claim is without merit. At the time Plaintiff filed his complaint, the Local Rules for the Northern District of Florida required that any *pro se* civil rights action pursuant to § 1983 be submitted using the appropriate form, and further limited any complaint or memorandum to 25 pages (unless the plaintiff received leave to file otherwise). N.D. Fla. Loc. R. 5.1(J) (2014). The district court directed Plaintiff to amend his complaint and noted that the complaint must

19

comply with Local Rule 5.1(J), meaning that it could not exceed 25 pages and must be filed on the court-provided form designated for non-prisoner civil rights cases. Although the court-provided form directs a § 1983 litigant to "[s]tate what rights under the Constitution, laws, or treatises of the United States [he] claim[s] have been violated," it does not explicitly prohibit a litigant from raising state-law claims. *See* N.D. Fla. Civil Rights Complaint Form for Non-Prisoner Litigants in § 1983 Actions, *available at*

http://www.flnd.uscourts.gov/forms/Pro%20Se/Complaint-Prisoner1983.pdf. But in any event, Plaintiff does not identify what state-law claims he wished to present. Nor did Plaintiff's initial complaint or amended complaint allege any state-law claims. Accordingly, we conclude that Plaintiff's claim is without merit.

## III.    CONCLUSION

Based on the foregoing, the district court's dismissal of Plaintiff's complaint for failure to state a claim under § 1915(e)(2)(B)(i) is **AFFIRMED**.

20